Margarite Auten, Appellant, v. Harold Auten, Respondent.

Argued October 22, 1954; decided December 31, 1954.

*Michael Alexander, Bernard B. Smith* and *Leonard H. Steibel* for appellant. I. The effect of the English separation action upon the separation agreement must be determined in accordance with the rule of law applied by the English courts. (*Rennie* v. *Rennie,* 287 N. Y. 86; *Lynde* v. *Lynde,* 41 App. Div. 280, 162 N. Y. 405, 181 U. S. 183; *Swift & Co.* v. *Bankers Trust Co.,* 280 N. Y. 135; *Myles* v. *Cuba R. R. Co.,* 182 Misc. 169; *Lann* v. *United States Steel Works Corp.,* 166 Misc. 465; *Matter of Palmer,* 192 Misc. 385, 275 App. Div. 792; *Graham* v. *First Nat. Bank of Norfolk,* 84 N. Y. 393; *Hutchinson* v. *Ross,* 262 N. Y. 381.)

II. Even assuming, *arguendo,* that the effect of the English separation action upon the separation agreement must be determined in accordance with the rule of law applied by the courts of New York, the judgment of the Appellate Division affirming Special Term cannot be sustained. (*Woods* v. *Bard,* 285 N. Y. 11; *Krell* v. *Krell,* 192 Misc. 1; *Clark* v. *Kirby,* 243 N. Y. 295; *Dimick* v. *Dimick,* 230 App. Div. 99; *Van Horn* v. *Van Horn,* 196 App. Div. 472; *Chamberlain* v. *Cuming,* 37 Misc. 815; *Estin* v. *Estin,* 296 N. Y. 308, 334 U. S. 541; *Gifford* v. *Corrigan,* 117 N. Y. 257; *Rosmarin* v. *Rosmarin,* 238 App. Div. 798; *De Brauwere* v. *De Brauwere,* 203 N. Y. 460; *Patino* v. *Patino,* 195 Misc. 887, 278 App. Div. 756, 278 App. Div. 921.)

*Saul Hammer* for respondent. I. The separation agreement sued upon is governed by the law of the State of New York. (*Bitterman* v. *Schulman,* 265 App. Div. 486; *Stumpf* v. *Hallahan,* 101 App. Div. 383, 185 N. Y. 550; *Vander Horst* v. *Kittredge,* 229 App. Div. 126; *Aronson* v. *Carobine,* 129 Misc. 800; *Rennie* v. *Rennie,* 287 N. Y. 86.) II. The law of the contract also governs the interpretation and legal effect of any acts urged as a defense or discharge of the agreement. (*Benton* v. *Safe Deposit Bank,* 255 N. Y. 260; *Pritchard* v. *Norton,* 106 U. S. 124.) III. The law of domicile does not govern. (*Vander Horst* v. *Kittredge,* 229 App. Div. 126; *Graham* v. *First Nat. Bank of Norfolk,* 84 N. Y. 393; *Hutchinson* v. *Ross,* 262 N. Y. 381.) IV. Appellant repudiated the agreement sued upon by instituting suit against respondent for judicial separation. (*O'Brien* v. *O'Brien,* 252 App. Div. 427; *Hettich* v. *Hettich,* 278 App. Div. 518; *Woods* v. *Bard,* 285 N. Y. 11; *Krell* v. *Krell,* 192 Misc. 1; *Schmelzel* v. *Schmelzel,* 287 N. Y. 21; *Dimick* v. *Dimick,* 230 App. Div. 99; *Van Horn* v. *Van Horn,* 196 App. Div. 472.) V. In any event, appellant's breach of the covenants of the agreement barred any subsequent recovery thereunder. (*Duryea* v. *Bliven,* 122 N. Y. 567; *Haskell* v. *Haskell,* 207 App. Div. 723; *Muth* v. *Wuest,* 76 App. Div. 332; *Matter of Noel,* 173 Misc. 844; *Cole* v. *Addison,* 153 Ore. 688; *Harwood* v. *Harwood,* 182 Misc. 130; *Roth* v. *Roth,* 77 Misc. 673; *Schmidt* v. *Schmidt,* 74 Misc. 423.) VI. No rights survive to appellant after her repudiation of the separation agreement.

FULD, J. In this action to recover installments allegedly due for support and maintenance under a separation agreement executed in this state in 1933, the wife's complaint has been dismissed, on motion for summary judgment, upon the ground that her institution of an action for separation in England constituted a repudiation and a rescission of the agreement under New York law. Determination of the appeal, involving as it does a question of conflict of laws, requires examination of the facts disclosed by the papers before us.

Married in England in 1917, Mr. and Mrs. Auten continued to live there with their two children until 1931. In that year, according to plaintiff, defendant deserted her, came to this country and, in the following year, obtained a Mexican divorce and proceeded to " marry " another woman. Unable to come to terms with the ocean between them, plaintiff made a trip to New York City to see and talk to defendant about adjustment of their differences. The outcome was the separation agreement of June, 1933, upon which the present action is predicated. It obligated the husband to pay to a trustee, for the " account of " the wife, who was to return to England, the sum of £50 a month for the support of herself and the children. In addition, the agreement provided that the parties were to continue to live separate and apart, that neither should sue " in any action relating to their separation " and that the wife should not " cause any complaint to be lodged against * * * [the husband], in any jurisdiction, by reason of the said alleged divorce or remarriage ".

Immediately after the agreement was signed, plaintiff returned to England, where she has since lived with her children, and it is alleged by her — but disputed by defendant — that the latter is also domiciled in that country. Be that as it may, defendant failed to live up to his agreement, making but a few payments under it, with the result that plaintiff was left more or less destitute in England with the children. About a year after the agreement had been executed, in August of 1934, plaintiff filed a petition for separation in an English court, charging defendant with adultery. Defendant was served in New York with process in that suit on December 4, 1936, and, in July, 1938, an order was entered requiring defendant to pay alimony *pendente lite*. This English action — which, we are told

never proceeded to trial — was instituted upon advice of English counsel that it " was the only method " by which she " could collect money " from defendant; it was done, plaintiff expressly declares, to " enable " her " to enforce " the separation agreement, and not with any thought or intention of repudiating it.

The years passed, and in 1947, having realized nothing as a result of the English action and little by reason of the New York separation agreement, plaintiff brought the present suit to recover the sum of $26,564, which represents the amount allegedly due her, under the agreement, from January 1, 1935 to September 1, 1947.

In his answer, defendant admitted making the agreement, but, by way of a separate defense — one of several — claimed that plaintiff's institution of the separation suit in England operated as a repudiation of the agreement and effected a forfeiture of her right to any payments under it. Following a motion by the wife for summary judgment and a cross motion by the husband for like relief, the court at Special Term granted the husband's cross motion and dismissed the complaint. The Appellate Division affirmed, with leave to the wife, however, to serve an amended complaint, asserting any cause of action which accrued prior to the date of the commencement of the English suit. The ensuing judgment, dismissing all of the wife's claims which accrued subsequent to that date, is a final judgment of modification, and the wife's appeal therefrom is properly before us as of right. (306 N. Y. 752; see, also, Cohen and Karger, Powers of the New York Court of Appeals, pp. 88–91, 222–223.)

Both of the courts below, concluding that New York law was to be applied, held that under such law plaintiff's commencement of the English action and the award of temporary alimony constituted a rescission and repudiation of the separation agreement, requiring dismissal of the complaint. Whether that is the law of this state, or whether something more must be shown to effect a repudiation of the agreement (cf. *Hettich* v. *Hettich,* 304 N. Y. 8, 13–14; *Woods* v. *Bard,* 285 N. Y. 11; *Butler* v. *Butler,* 206 App. Div. 214), need not detain us, since in our view it is the law of England, not that of New York, which is here controlling.

Choosing the law to be applied to a contractual transaction with elements in different jurisdictions is a matter not free from

difficulty. The New York decisions evidence a number of different approaches to the question. (See, e.g., *Jones* v. *Metropolitan Life Ins. Co.,* 158 Misc. 466.)

Most of the cases rely upon the generally accepted rules that " All matters bearing upon the execution, the interpretation and the validity of contracts * * * are determined by the law of the place where the contract is made ", while " All matters connected with its performance * * * are regulated by the law of the place where the contract, by its terms, is to be performed." (*Swift & Co.* v. *Bankers Trust Co.,* 280 N. Y. 135, 141; *Union Nat. Bank* v. *Chapman,* 169 N. Y. 538, 543; see, also, *Zwirn* v. *Galento,* 288 N. Y. 428; *United States Mtge. & Trust Co.* v. *Ruggles,* 258 N. Y. 32, 38; Restatement, Conflict of Laws, §§ 332, 358; Goodrich on Conflict of Laws [2d ed., 1938], p. 293.) What constitutes a breach of the contract and what circumstances excuse a breach are considered matters of performance, governable, within this rule, by the law of the place of performance. (See *Richard* v. *American Union Bank,* 241 N. Y. 163, 166–167; Restatement, Conflict of Laws, § 370; Goodrich, *op. cit.,* p. 293.)

Many cases appear to treat these rules as conclusive. Others consider controlling the intention of the parties and treat the general rules merely as presumptions or guideposts, to be considered along with all the other circumstances. (See *Wilson* v. *Lewiston Mill Co.,* 150 N. Y. 314, 322–323; *Stumpf* v. *Hallahan,* 101 App. Div. 383, 386, affd. 185 N. Y. 550; *Grand* v. *Livingston,* 4 App. Div. 589, affd. 158 N. Y. 688.) And still other decisions, including the most recent one in this court, have resorted to a method — first employed to rationalize the results achieved by the courts in decided cases (see *Barber Co.* v. *Hughes,* 223 Ind. 570, 586) — which has come to be called the " center of gravity " or the " grouping of contacts " theory of the conflict of laws. Under this theory, the courts, instead of regarding as conclusive the parties' intention or the place of making or performance, lay emphasis rather upon the law of the place " which has the most significant contacts with the matter in dispute ". (*Rubin* v. *Irving Trust Co.,* 305 N. Y. 288, 305; see, also, *Jones* v. *Metropolitan Life Ins. Co., supra,* 158 Misc. 466, 469–470; *Jansson* v. *Swedish American Line,* 185

F. 2d 212; *Barber Co.* v. *Hughes, supra,* 223 Ind. 570; *Boissevain* v. *Weil,* [1949] 1 K. B. 482, 490–492; Cook, " Contracts " and the Conflict of Laws: " Intention " of the Parties, 32 Ill. L. Rev. 899, 918–919; Harper, Policy Bases of the Conflict of Laws: Reflections on Rereading Professor Lorenzen's Essays, 56 Yale L. J. 1155, 1163–1168; Note, Choice of Law Problems in Direct Actions Against Indemnification Insurers, 3 Utah L. Rev. 490, 498–499.)

Although this " grouping of contacts " theory may, perhaps, afford less certainty and predictability than the rigid general rules (see Note, *op. cit.,* 3 Utah L. Rev. 490, 498), the merit of its approach is that it gives to the place " having the most interest in the problem " paramount control over the legal issues arising out of a particular factual context, thus allowing the forum to apply the policy of the jurisdiction " most intimately concerned with the outcome of [the] particular litigation " (3 Utah L. Rev., pp. 498–499). Moreover, by stressing the significant contacts, it enables the court, not only to reflect the relative interests of the several jurisdictions involved (see *Vanston Committee* v. *Green,* 329 U. S. 156, 161–162), but also to give effect to the probable intention of the parties and consideration to " whether one rule or the other produces the best practical result ". (*Swift & Co.* v. *Bankers Trust Co., supra,* 280 N. Y. 135, 141; see *Vanston Committee* v. *Green, supra,* 329 U. S. 156, 161–162.)

Turning to the case before us, examination of the respective contacts with New York and England compels the conclusion that it is English law which must be applied to determine the impact and effect to be given the wife's institution of the separation suit.[1] It hardly needs stating that it is England which has all the truly significant contacts, while this state's sole nexus with the matter in dispute — entirely fortuitous, at that — is that it is the place where the agreement was made and where the trustee, to whom the moneys were in the first

---

1. Our decision in *Rennie* v. *Rennie* (287 N. Y. 86) casts no light on the problem. The court did not there consider whether it is the law of the place where the separation agreement was made or of the jurisdiction where the separation suit or other judicial proceeding was brought which determines the effect that such action may have upon the agreement.

instance to be paid, had his office. The agreement effected a separation between British subjects, who had been married in England, had children there and lived there as a family for fourteen years. It involved a husband who, according to the papers before us, had willfully deserted and abandoned his wife and children in England and was in the United States, when the agreement was signed, merely on a temporary visa. And it concerned an English wife who came to this country at that time because it was the only way she could see her husband to discuss their differences. The sole purpose of her trip to New York was to get defendant to agree to the support of his family, and she returned to England immediately after the agreement was executed. While the moneys were to be paid through the medium of a New York trustee, such payments were " for account of " the wife and children, who, it was thoroughly understood, were to live in England. The agreement is instinct with that understanding; not only does it speak in terms of English currency in providing for payments to the wife, not only does it recite that the first payment be made to her " immediately before sailing for England ", but it specifies that the husband may visit the children " if he should go to England ".

In short, then, the agreement determined and fixed the marital responsibilities of an English husband and father and provided for the support and maintenance of the allegedly abandoned wife and children who were to remain in England. It merely substituted the arrangements arrived at by voluntary agreement of the parties for the duties and responsibilities of support that would otherwise attach by English law. There is no question that England has the greatest concern in prescribing and governing those obligations, and in securing to the wife and children essential support and maintenance. And the paramount interest of that country is not affected by the fact that the parties separate and provide for such support by a voluntary agreement. It is still England, as the jurisdiction of marital domicile and the place where the wife and children were to be, that has the greatest concern in defining and regulating the rights and duties existing under that agreement, and, specifically, in determining the circumstances that effect a termination or repudiation of the agreement.

Nor could the parties have expected or believed that any law other than England's would govern the effect of the wife's institution of a separation action.  It is most unlikely that the wife could have intended to subject her rights under English law to the law of a jurisdiction several thousand miles distant, with which she had not the slightest familiarity.  On the contrary, since it was known that she was returning to England to live, both parties necessarily realized that any action which she took, whether in accordance with the agreement or in violation of it, would have to occur in England.  If any thought was given to the matter at all, it was that the law of the place where she and the children would be should determine the effect of acts performed by her.

It is, perhaps, not inappropriate to note that, even if we were not to place our emphasis on the law of the place with the most significant contacts, but were instead simply to apply the rule that matters of performance and breach are governed by the law of the place of performance, the same result would follow.  Whether or not there was a repudiation, essentially a form of breach (see Restatement, Contracts, § 318; 4 Corbin on Contracts [1951], § 954, pp. 829–834), is also to be determined by the law of the place of performance (cf. *Wester* v. *Casein Co. of America,* 206 N. Y. 506; Restatement, Conflict of Laws, § 370, *Caveat*), and that place, so far as the wife's performance is concerned, is England.  Whatever she had to do under the agreement — " live separate and apart from " her husband, " maintain, educate and support " the children and refrain from bringing " any action relating to [the] separation " — was to be done in England.  True, the husband's payments were to be made to a New York trustee for forwarding to plaintiff in England, but that is of no consequence in this case.  It might be, if the question before us involved the manner or effect of payment to the trustee, but that is not the problem; we are here concerned only with the effect of the wife's performance.  (Cf. *Zwirn* v. *Galento, supra,* 288 N. Y. 428, 433.)

Since, then, the law of England must be applied, and since, at the very least, an issue exists as to whether the courts of that country treat the commencement of a separation action as a

repudiation of an earlier-made separation agreement, summary judgment should not have been granted.[2]

As to defendant's further contention that, in any event, plaintiff's commencement of the English action amounted to a material breach of her covenant not to sue, barring recovery upon the agreement, we need but say that this question, too, must be governed by English law, and for the same reasons already set forth.

The judgment of the Appellate Division and that of Special Term insofar as they dismiss the complaint should be reversed, with costs in all courts, and the matter remitted for further proceedings in accordance with this opinion.

LEWIS, Ch. J., CONWAY, DESMOND, DYE, FROESSEL and VAN VOORHIS, JJ., concur.

Judgments reversed, etc.

---

2. In point of fact, the English lawyers, whose affidavits have been submitted by plaintiff, unequivocally opine that the institution of a separation suit and the award of alimony *pendente lite* did not, under the law of England, constitute a repudiation of the separation agreement or bar the present action to recover amounts due under it.