Van Voobhis, J. (dissentiiig).
The decision about to be made of this appeal changes the established law of this State, one of the most recent decisions the other way being Kaufman v. American Youth Hostels (5 N Y 2d 1016), where all of the “ significant contacts ” were with New York State except the mountain which plaintiff’s intestate was climbing when she met her death. The defense of immunity of a charitable corporation under the Oregon law, where the accident occurred, was inapplicable under the law of New York where the defendant corporation was organized and staffed, and plaintiff and his intestate resided. Nevertheless the court declined to strike that defense from the answer, based upon Oregon law. Concerning, as it did, solely the status of the defendant corporation, Kaufman v. American Youth Hostels presented a stronger case for the application of New York law than does the present. The case of Auten v. Auten (308 N. Y. 155), involving a separation agreement between English people and providing for the support of a wife and children to continue to live in England, accomplished no such revolution in the law as the present appeal. Auten v. Auten dealt with contracts, the agreement was held to be governed by the law of the country where it was mainly to be performed, which had previously been the law, and the salient expressions ‘ ‘ center of gravity “ grouping of contacts ’ ’, and similar catchwords were employed as a shorthand reference to the reconciliation of such rigid concepts in the conflict of laws as the formulae making applicable the place where the contract was signed or where it was to be performed — rules which themselves were occasionally in conflict with one another. In the course of the opinion it was stated that ‘ ‘ even if we were not to place our emphasis on the law of the place with the most significant contacts, but were instead simply to apply the rule that matters of performance and breach are governed by the law of the place of performance, the same result would follow” (308 N. Y., p. 163). The decision in Auten v. Auten rationalized and rendered more workable the existing law of contracts. The name ‘ ‘ grouping of contacts” was simply a label to identify the rationalization of existing decisions on the conflict of laws in *486 contract eases which were technically inconsistent, in some instances. The difference between the present case and Auten v. Auten is that Auten did not materially change the law, but sought to formulate what had previously been decided. The present case makes substantial changes in the law of torts. The expressions “ center of gravity ”, “ grouping of contacts,” and ‘ ‘ significant contacts ’ ’ are catchwords which were not employed to define and are inadequate to define a principle of law, and were neither applied to nor are they applicable in the realm of torts.
Any idea is without foundation that cases such as the present render more uniform the laws of torts in the several States of the United States. Attempts to make the law or public policy of New York State prevail over the laws and policies of other States where citizens of New York State are concerned are simply a form of extraterritoriality which can be turned against us wherever actions are brought in the courts of New York which involve citizens of other States. This is no substitute for uniform State laws or for obtaining uniformity by covering the subject by Federal law. Undoubtedly ease of travel and communication, and the increase in interstate business have rendered more awkward discrepancies between the laws of the. States in many respects. But this is not a condition to be cured by introducing or extending principles of extraterritoriality, as though we were living in the days of the Roman or British Empire, when the concepts were formed that the rights of a Roman or an Englishman were so significant that they must be enforced throughout the world even where they were otherwise unlikely to be honored by “ lesser breeds without the law.” Importing the principles of extraterritoriality into the conflicts of laws between the States of the United States can only make confusion worse confounded. If extraterritoriality is to be the criterion, what would happen, for example, in case of an automobile accident where some of the passengers came from or were picked up in States or countries where causes of action against the driver were prohibited, others where gross negligence needed to be shown, some, perhaps, from States where contributory negligence and others where comparative negligence prevailed? In the majority opinion it is said that “Where the defendant’s exercise of due care in the operation of his automobile is in issue, the jurisdiction in which the allegedly wrongful conduct occurred *487 will usually have a predominant, if not exclusive, concern.” This is hardly consistent with the statement in the footnote that gross negligence would not need to be established in an action by a passenger if the accident occurred in a State whose statute so required. If the status of the passenger as a New Yorker would prevent the operation of a statute in a sister State or neighboring country which granted immunity to the driver in suits by passengers, it is said that it would also prevent the operation of a statute which instead of granting immunity permits recovery only in case of gross negligence. There are passenger statutes or common-law decisions requiring gross negligence or its substantial equivalent to be shown in 29 States. One wonders what would happen if contributory negligence were eliminated as a defense by statute in another jurisdiction? Or if comparative negligence were established as the rule in the other State?
In my view there is no overriding consideration of public policy which justifies or directs this change in the established rule or renders necessary or advisable the confusion which such a change will introduce.
The judgment dismissing the complaint should be affirmed.
Chief Judge Desmond and Judges Dye, Burke and Foster concur with Judge Fuld ; Judge Van Yoorhis dissents in an opinion in which Judge Scileppi concurs.
Judgment reversed, with costs in all courts, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.