ROBERTA B. DOWNS, Respondent, *v.* AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, Appellant, et al., Defendant.

First Department, October 29, 1963.

*Richard E. Shandell* of counsel (*Desmond T. Barry* with him on the brief; *Barry, Treanor, Shandell & Brophy,* attorneys), for appellant.

*Emanuel Baetich* of counsel (*Stuart F. Cartoon* with him on the brief; *Gainsburg, Gottlieb, Levitan & Cole,* attorneys), for respondent.

BREITEL, J. P.   A New York wife and mother, whose husband has left the State and failed to meet his obligations to support his family, sues his employer on a partial assignment of wages. The issue is whether a statute of Massachusetts, where the husband is employed and paid his wages, would forbid recovery there and whether it should be given effect in the courts of New York.

The employer, a Massachusetts insurance company, does business in New York State with 26 offices in the City of New York.   Plaintiff wife was granted a summary judgment in the amount of $5,202.69, as equivalent to the assigned part of the husband's earnings plus interest and costs.   Defendant employer appeals arguing that the assignment is invalid or ineffective because the present contract of employment was entered into and is to be performed in Massachusetts.

The order and judgment in favor of plaintiff wife should be affirmed.   The assignment, made long before the husband's resort to Massachusetts employment and without reference to any Massachusetts event or law, is valid.   It should be recognized as valid and effective in the New York courts, if not also in those of Massachusetts.

The Downses were married in 1946.   They have twins born in 1949.   In 1953 the wife obtained in New York a judgment of separation from the husband on the grounds of nonsupport and cruelty, the latter specified as habitual intoxication.   The wife and children continue to reside in this State.

The 1953 judgment incorporated a 1952 separation agreement executed pending the action.   It provided for the husband to pay 30% of his earnings for the support of the wife and an additional sum of $600 to $1,000 per annum, depending upon the attained age of the children, for the support of the twins.   In no event were the aggregate payments to be less than $5,000 per annum.   In order to secure the payments the husband assigned, in the agreement, up to 50% of his future earnings, and provision was also made for the precise form of notice to the employer in the event the husband defaulted.

Since the New York court incorporated the agreement, the judicial imprimatur was added, and the directions would qualify as a court order of support under the later-enacted section 49-b of the Personal Property Law (as added by L. 1958, ch. 659).

Since November 4, 1959 the husband has been in default and evidently had then left New York.   In 1960, the wife discovered that he was in New Hampshire, a State with which he had antecedent connections.   There she proceeded against him under the

Uniform Reciprocal Enforcement of Support Act (N. Y. Uniform Support of Dependents Law [Domestic Relations Law, § 30 *et seq.*]). By a New Hampshire court order the husband was directed to pay $25 per week. Under this order he paid $2,100 up to the commencement of this action. During that period he should have paid $12,028 under the agreement and New York judgment.

In early 1961 the wife learned of the husband's employment with defendant employer at its Massachusetts office. She served on the employer in New York the notice required by the separation agreement, together with a copy of the separation agreement, and demanded weekly payment to her of $107.75 of the husband's future weekly earnings of about $250. The notice and separation agreement reveal Mrs. Downs' New York residence, the execution of the separation agreement in New York calling for alimony and support payments, the provision that payments were to be made to a New York bank, and that at the time of execution of the agreement an action for separation was pending in New York. Eighteen days after the notice the employer was advised that a New York " decree " existed. The employer rejected the demand on the grounds that the New Hampshire support order modified the agreement and that it was invalid under the Massachusetts law governing assignments. Only the invalidity ground is urged now.[1]

Concededly, the assignment in suit does not comply with the requirements of the Massachusetts statute. For example, the Massachusetts statute would limit deductions from a wage earner's assigned compensation to 10%.

At the outset it should be observed that the statute of Massachusetts, like that of New York, governing assignments of wages is directed at the regulation of commercial assignments obtained from improvident wage earners. Indeed, a primary concern in Massachusetts is the protection of the wage earner's wife and family; thus, the statute there requires the spouse's consent to the typical assignment of wages. (See Laws of Mass., ch. 154, especially §§ 3, 5; Note, Efforts to Eliminate Some Evils of Unrestricted Credit for Wage Earners, 45 Harv. L. Rev. 1102; Smith, The History and Purpose of the Wage Assignment Statutes, 5 Mass. L. Q. 479; N. Y. Personal Property Law, §§ 46–49-b; 1950 Report of N. Y. Law Rev. Comm., p. 43.)

---

1. Of course, "validity" of the assignment is not involved, but the limited question whether it is enforcible in Massachusetts, and whether New York is bound to or should enforce a policy of Massachusetts, if it be contrary to that of New York. It is surely "valid" in New York as to New York earned wages. To speak of the assignment's invalidity reveals faulty analysis of the transaction, and biases the ensuing reasoning.

While section 1 of the Massachusetts statute broadly defines an assignment to include any transfer in or to future wages or salary, the later sections refer restrictively to small loans (§ 2), debts, and to goods sold and delivered (§ 3). Most revealing is the statutory form of assignment which would be wholly inapplicable to an assignment to secure or provide support for the employee's family (§ 5).

In this case, none of the presuppositions of the Massachusetts statute is present. This is not a commercial assignment. It is designed to provide, rather than to diminish, support for the wage earner's family. It was not executed with reference to Massachusetts employment. It is more than a private arrangement; instead it bears judicial imprimatur from the courts of the State of marital and personal domicile of the dependents.

Assuming, however, that an assignment of this character and content is somehow within the purpose and application of the Massachusetts statute, some critical factors should be noted. The assignment of wages was made between a New York couple, with reference to the general employment of the husband, for the support of the family. The marital domicile, the personal jurisdiction over the parties, and the law "applicable" to the separation agreement, was severally that of New York. Indeed, the separation agreement expressly recited that it was to be governed by the law of New York. To top it off, the agreement and the obligations of the parties are embraced in a New York matrimonial judgment. At that time, and for almost a decade later, there was nothing referable to the territory or law of Massachusetts. Moreover, any event with relation to Massachusetts was not within the contemplation or reasonable expectations of the parties, and even up to this point, and still today, the paramount interest of New York in the support of the New York wife and the New York children is manifest. Thus, the fact complex in this case is well within the rationale of *Auten* v. *Auten* (308 N. Y. 155) and *Babcock* v. *Jackson* (12 N Y 2d 473) where the Court of Appeals rejected "traditional" conflict of law rules in favor of the grouping of contacts doctrine.[2]

Indeed, the fact complex here is amazingly parallel to that in the *Auten* case, which also involved a defaulting husband who had to be pursued into his foreign shelter. And it was there that the Court of Appeals had made, until then, its greatest and

2. For that reason, too, the common-law status of wage assignments in Massachusetts is immaterial, assuming, as may not be true, that under that law assignments of future wages under future employment contracts had no effect whatever in law or equity (see Restatement, Contracts, § 154, subd. (2) and *Comments*).

clearest departure from the traditional territorial rules in conflict of laws. In doing so it rejected the classic rules and applied the English law to protect the English family, although New York was the place in which the contract was made and was " to be performed ". Thus the contract, in accordance with its purpose and the expectations of the parties, was sustained as valid.

These observations make it clear that the " traditional " rule in the first Restatement, Conflict of Laws (§ 348) is hardly applicable. It was expressly relied on in *Mogul* v. *Jenkins Bros.* (203 Misc. 635) which held that the law of the place of employment governed the validity of a wage assignment. Technical rules aside, the situation there was not like that here — an involved transaction in a noncommercial background. In contrast, in *Mogul* v. *Jenkins Bros.* a New York resident, in the purchase on credit of a watch, attempted an assignment of his wages earned in his existing employment in Connecticut. The assignment would be void in Connecticut and the New York court refused to enforce it. Here, Massachusetts, the State of employment, was never in the transaction until long after the separation agreement and the assignment had been in effect. Aside from these crucial distinctions, the old Restatement rule and the *Mogul* decision are based on the " vested rights " doctrine in its unqualified form, which has been specifically discarded in New York (see *Babcock* v. *Jackson*, 12 N Y 2d 473, 478, *supra*; cf. 4 Corbin, Contracts, § 873, 1962 pocket part, discussing the *Mogul* case and criticizing the conflict rule applied). The old Restatement rule has also been substantially repudiated in Restatement, Second, Conflict of Laws, and particularly with respect to interstate assignments of wages (see Tentative Draft. No. 6 [April 22, 1960], §§ 332, 332a, 332b, 348, especially Illustration 1; see, also, § 350, especially Illustrations 4 and 5).

Choice of law rules are policy rules (e.g., *Babcock* v. *Jackson, supra,* p. 484; Cheatham, Theories of Conflict of Laws, 58 Harv. L. Rev. 361, 382; Lorenzen, Conflict of Laws, 33 Yale L. J. 736, 748). Actually, a court of the forum applies its own law unless to do so would defeat the reasonable expectations of the parties or be unjust to them or others (Ehrenzweig, Conflict of Laws, pp. 347, 352–354; Kelsen, General Theory of Law and State, pp. 243–248). Then it chooses the foreign law for it to apply. It is not that the foreign law inheres in the transaction and like some ghostly but ineradicable reality must be " found " by the court of the forum. Here, to frustrate the assignment is

to defeat the expectations and written covenants of the parties, and to award success to the maneuvers of the defaulting husband, without commensurate benefit to any third parties.

A New York court, in view of the expectations of the parties, lack of injury to third parties, and New York's predominant interest in the protection of the family, should apply New York law, and no doctrine of comity requires otherwise. Moreover, it is reasonable to suppose that the Massachusetts courts will recognize the New York law requiring payment by the employer and the present judgment against the employer (as indeed perhaps they must under the full faith and credit clause — see Jackson, Full Faith and Credit, 45 Col. L. Rev. 1, 7–16). Certainly, even if it has a choice, a Massachusetts court in balancing its policy against commercial assignments will most likely accord greater weight to New York's policy to protect a New York wife and children from the neglect of a defaulting nonresident husband. After all, Massachusetts too, as its statute shows, is motivated by the policy to protect the wage earner and especially his family from the wage earner's improvidence. In any event, Massachusetts may not look behind a sister state judgment to review the acceptability to it of the transaction upon which the judgment rests (*Fauntleroy* v. *Lum,* 210 U. S. 230; *Harris* v. *Balk,* 198 U. S. 215).

Moreover, the applicable policy of New York was already made plain in *Morris Plan Ind. Bank of N. Y.* v. *Gunning* (295 N. Y. 324). There quasi in rem jurisdiction was sustained in an action against a Pennsylvania wage earner begun by attaching his wages payable to him by a Pennsylvania employer. The action was brought to collect upon a Pennsylvania judgment. The attachment was sustained even though under Pennsylvania law such recourse to wages was forbidden. The only contacts with New York were (1) the employer, Pennsylvania Railroad Company, did business here and (2) plaintiff happened to be a New York corporation (a fact not relied upon). Thus, New York favors collection of debts, even those incurred out of State, and even by a method forbidden by a contrary out-of-State policy.

This case offers much less difficulty than the *Morris Plan* case. It involves a New York support obligation embodied in a New York separation judgment, not shown to be contrary to any out-of-State policy, and which is sought to be enforced in the manner assented to by the debtor over whom the New York courts then had personal jurisdiction.

Accordingly, the order and judgment granting plaintiff-respondent summary judgment should be affirmed, with costs.

McNALLY, J. (dissenting). We are required to determine the validity of an assignment of wages incorporated in a separation agreement dated August 14, 1952 made between plaintiff and her then husband, defendant Carll S. Downs. Thereby, in the event of the husband's default in the payment of support, his employer is authorized to pay to the wife the amount of the arrears to the extent of 50% of the wages or salary due him. The separation decree of the Supreme Court, County of New York, dated March 23, 1953, ratifies and approves the agreement but expressly provides it shall not merge with and shall survive the decree. Since November 4, 1959 the husband sustained defaults in the total sum of $10,690.

The husband entered the employ of defendant-appellant in January, 1961; he is employed in its Wakefield, Massachusetts, office. Defendant-appellant is a Massachusetts corporation; its principal place of business is in Wakefield, and it is authorized to do business in New York. The husband has not been served with process in this action; he resides in New Hampshire.

Whether the earnings of the husband under his employment contract with defendant-appellant are assignable is determined by the law of Massachusetts where the employment originated and the place of performance. The effectiveness of the assignment is resolved by the law of the place where it is made. (*Mogul* v. *Jenkins Bros.*, 203 Misc. 635 [App. Term, 1st Dept.].)

Massachusetts law (Laws of Mass., ch. 154, § 3) provides: "§ 3. No assignment of or order for future wages other than one subject to the preceding section shall be valid for a period exceeding two years from the making thereof, nor unless made to secure a debt contracted prior to or simultaneously with the execution of said assignment or order, nor unless executed in writing in the standard form set forth in section five and signed by the assignor in person and not by attorney, nor unless such assignment or order states the date of its execution, the money or the money value of goods actually furnished by the assignee and the rate of interest, if any, to be paid thereon. Three fourths of the weekly earnings or wages of the assignor shall at all times be exempt from such assignment or order, and no assignment or order shall be valid which does not so state on its face. No such assignment or order shall be valid unless the written acceptance of the employer of the assignor, and, if the assignor is a married man, the written consent of his wife to the making thereof, are endorsed thereon or attached thereto."

The Massachusetts statute proscribes the assignment of future wages for a period exceeding two years from the making of the assignment, limits the scope of the assignment to secure a debt

contracted prior to or simultaneously with the assignment, exempts three fourths of the weekly earnings and states such assignment is invalid unless accepted in writing by the employer. Here the assignment antedated by more than eight years the husband's employment by defendant-appellant, the employer has refused to accept it and it is not for a prior or simultaneously contracted debt.

Inapplicable are cases relative to garnishees and attachments which involve remedies and are governed by the law of the forum. (*Morris Plan Ind. Bank of N. Y.* v. *Gunning,* 295 N. Y. 324, 331.)

*Matter of Knauth* (12 N Y 2d 259) does not avail the plaintiff-respondent. There the statutory limitation on the income beneficiary's right to alienate was held inapplicable to an assignment of his income from an existing trust to his wife for her and their children's support. At common law there was no disability in respect of such an assignment. Here involved is the application of a wage assignment to wages and earnings deriving from future employment which at common law did not impose any duty on an employer such as the defendant-appellant. (Restatement, Contracts, § 154, subd. [2].) The Massachusetts statute within limitations enables an assignment of earnings arising from future employment, but does not support the assignment herein.

Accordingly, I dissent and vote to reverse the grant of summary judgment to plaintiff-respondent and grant summary judgment to defendant-appellant dismissing the complaint.

EAGER and STEUER, JJ., concur with BREITEL, J. P.; McNALLY, J., dissents in opinion, in which STEVENS, J., concurs.

Order and judgment granting plaintiff-respondent summary judgment affirmed, with costs to respondent.