In the Matter of J. E. SCHECTER CORPORATION, Debtor.

No. 62–B–934.

United States District Court
E. D. New York.

Oct. 21, 1964.

Schwartz, Weissberger & Leichter, New York City, Herman N. Schwartz, New York City, of counsel, for petitioners, for the motion.

Levy, Levy & Ruback, New York City, Robert I. Ruback, New York City, of counsel, for debtor, in opposition.

Siegel, Sommers & Schwartz, Brooklyn, N. Y., Leonard Schwartz, Brooklyn, N. Y., of counsel, for The Official Creditors Committee, in opposition.

RAYFIEL, District Judge.

The petitioners herein seek to review an order of Hon. William J. Rudin, Referee in Bankruptcy, dated July 20, 1964, wherein he denied a motion made by them on their own behalf and on behalf of others similarly situated to impress a trust, pursuant to Section 2A:102–11 of the Revised Statutes of the State of New Jersey, N.J.S.A., and Section 70 of the Lien Law of the State of New York, McKinney's Consol.Laws, c. 33, on funds in the possession of the debtor acquired as a result of an improvement of real property located in the State of New Jersey, and for the payment of counsel fees out of the said funds. They also seek, in the alternative, to review the refusal of the Referee to order the return of a portion of the said fund which, pursuant to the prior order of the Referee, had been paid to other creditors who had claimed that these were trust funds.

The facts, which are generally undisputed, follow: The William L. Crow Construction Company (Crow), a New York Corporation, was the general contractor in the construction of a real property improvement known as the "Engineering Quadrangle", at Princeton University, in Princeton, New Jersey. It entered into a sub-contract with the debtor, also a New York Corporation, for the performance by the latter of the plumbing, heating, ventilating and air conditioning work thereon for the sum of $1,223,970. The sub-contract provided that "All matters relating to the validity, performance, interpretation or construction of this agreement or the breach thereof shall be governed by the Law of the State of New York."

The debtor had substantially completed its work under the sub-contract on or about August 4, 1962, although the work was not fully completed until some time thereafter. On September 10, 1962, the debtor wrote to Crow, advising it that there was a balance of $212,909.18 due it for the work performed under the sub-contract. The letter contained a list of the names of forty-one sub-contractors and materialmen who had performed work for and/or supplied materials to the debtor for the job in question, then aggregating in value the sum of $245,041.13. The debtor requested Crow to pay the said claimants from the funds in its hands 50% of their respective claims. It does not appear from the record or the documents before me that the said payments were made.

On November 27, 1962 the debtor filed a petition for an arrangement under Chapter XI of the Bankruptcy Act and an order was entered authorizing it to continue in possession of its assets, and to conduct its business under the supervision of the Court, and staying all creditors from proceeding with their claims.

One of the sub-contractors listed in the letter of September 10, 1962, Johnson Service Company, moved before Referee Rudin on July 15, 1963, for an order permitting it to prosecute an action against the debtor on behalf of itself and others similarly situated for an accounting of the trust funds derived from the Princeton project. It appears that Johnson did not proceed further with the motion. Instead, on July 23, 1963, the *debtor* submitted a petition to the Referee asking for leave to settle and compromise *six* of the claims against the funds due it from Crow. The petition made no mention of the fact that there were *forty-one* claimants to the fund, as appeared from its letter of September 10, 1962. It alleged, *inter alia*, that its contract with Crow provided that it was to be governed by the law of the State of New York; that the six claims, which it enumerated, aggregated $223,943.14;

that Crow admitted that it owed the debtor $165,000; that the six claimants had agreed to compromise their claims for the sum of $67,683.13 (the addition in both the petition and the order submitted with it was incorrect, the correct total of the proposed settlement of said six claims being $67,183.13) and that the balance, less $5,000, which, pursuant to the guaranty furnished by the debtor, was to be retained by Crow for a period of one year from the completion of the project, was to be paid to the debtor and deposited in a depository to be designated by the Court.

On July 23, 1963 the Referee signed an order, submitted by the attorneys for the debtor, and consented to by the six creditors involved, the Secretary of the Creditors Committee, the Attorneys for the Creditors Committee and three other persons whose identity is not disclosed, which fixed the claim of the debtor against Crow at $165,000, authorized the debtor to settle the six claims as follows: Johnson Service Company, $18,836.10, Levi Case Company, Inc., $17,972.09, Robert B. Berwick & Company, $16,666.69, Contractors Piping Corp., $8,296.10, The Trybee Company, Inc., $4,754.61, and Charles F. Guyon, Inc., $657.54, and directed that the balance due the debtor, less $5,000 to be held by Crow against the said guaranty, be paid to the debtor and deposited in the County National Bank, Mineola, New York.

In accordance with said order the above-named six claimants received payments aggregating $67,183.13, and Crow retained the sum of $5,000 as security against the said guaranty and paid the balance of $92,816.27 to the debtor, which it presently holds in a special account in the bank designated in the order.

According to the papers before me the claims of the remaining thirty-five claimants to the fund aggregate $55,338.93.

On December 16, 1963 four of the said claimants, namely, Carrier Corporation, which had a claim in the sum of $9,029.50, American Radiator and Standard Sanitary Corporation, whose claim was $2,610.00, Sarco Company, Inc., whose claim was $363.45, and Sarcotherm Controls, Inc., whose claim was $176.64, moved before the Referee "for an order directing payment by the debtor in possession to the petitioners and other job claimants to a trust fund derived from the real property improvement known as 'Engineering Quadrangle' at Princeton University, Princeton, New Jersey as trust fund beneficiaries in the respective amounts prayed for in said petition and for legal fees" to the attorneys for the movants.

The debtor opposed the application on the grounds, first, that the law of New Jersey was applicable to the funds in question, and that Section 2A:102–11 of the Revised Statutes of that State, N.J. S.A., provided only for criminal penalties for misapplication of trust funds resulting from an improvement to real property, and not for civil remedies, and second, that the claims of the petitioners were barred by the statute of limitations.

■■ The Referee denied the motion and stated in his conclusions of law, that "1. the Lien Law of the State of New York only applies to a contract for the improvement of real property located in the State of New York" and "2. that Section 2A:102–11 of the New Jersey Statutes is a criminal statute which provides no civil remedy for a diversion of funds received by a contractor for an improvement to real property located in the State of New Jersey."

In support of the first conclusion he cited Allied Thermal Corporation v. James Talcott Inc., 3 N.Y.2d 302, at page 304, 165 N.Y.S.2d 91, at page 92, 144 N.E.2d 66, at page 67, wherein Judge Desmond of the New York State Court of Appeals said, "Only confusion could result from applying one part of a particular State's statutory system to a real property improvement situated in another State where the local statutory scheme is quite different." The Referee rejected the movants' contention that the law of the State of New York was applicable because of the provision to that effect in the debtor's contract with Crow.

He cited the case of Auten v. Auten, 308 N.Y. 155, at page 160, 124 N.E.2d 99, at page 101, 50 A.L.R.2d 246, in which Judge Fuld, of the New York State Court of Appeals, said, "Under this theory ['center of gravity' or 'grouping of contacts' theory of the conflict of laws], the courts, instead of regarding as conclusive the parties' intention or the place of making or performance, lay emphasis rather upon the law of the place 'which has the most significant contacts with the matter in dispute'." (Matter in brackets added). Judge Fuld then went on to say at page 161, 124 N.E.2d at page 102, "Although this 'grouping of contacts' theory may, perhaps, afford less certainty and predictability than the rigid general rules (see Note, op. cit., 3 Utah L.Rev. 490, 498), the merit of its approach is that it gives to the place 'having the most interest in the problem' paramount control over the legal issues arising out of a particular factual context, thus allowing the forum to apply the policy of the jurisdiction 'most intimately concerned with the outcome of [the] particular litigation'. 3 Utah L.Rev., pp. 498–499. Moreover, by stressing the significant contacts, it enables the court, not only to reflect the relative interests of the several jurisdictions involved (see Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 161, 162, 67 S.Ct. 237, 239, 91 L.Ed. 162), but also to give effect to the probable intention of the parties and consideration to 'whether one rule or the other produces the best practical result'. Swift & Co. v. Bankers Trust Co., supra, 280 N.Y. 135, 141, 19 N.E.2d 992, 995; see Vanston Bondholders Protective Committee v. Green, supra, 329 U.S. 156, 161, 162, 67 S.Ct. 237, 239."

In support of the second conclusion the Referee cited the case of Plevy v. Schaedel, 44 N.J.Super. 450, 130 A.2d 910, in which the Court held that N.J.S. 2A:102–10, N.J.S.A., created a criminal offense "where a contractor pays out moneys received by him on a building contract in those instances where his sub-contractors have not been paid". It held that "no civil remedy was created by force of the criminal statute."

■ In my opinion the cases cited by the Referee are dispositive of the petitioner's contentions respecting the funds which are in the debtor's possession as a result of the real property improvement in Princeton, New Jersey. I agree also with the Referee's opinion that he could not direct the return of the funds distributed to the six claimants pursuant to the order of July 23, 1963 since they were not parties to this motion.

■ However, in view of the foregoing it would appear that the funds paid to the said six creditors were distributed improperly inasmuch as notice of the application therefor was not given to the remaining 35 creditors, and, accordingly, application should be made by the debtor to recover them. The petition to review is therefore denied and the matter is remanded to the Referee for the purpose of directing the debtor to proceed with the appropriate motion to recover the said funds.

Settle order on notice.