**TRANSATLANTIC CEMENT, INC., Plaintiff,**

v.

**LAMBERT FRERES ET CIE. and Claude Lambert, Defendants.**

**No. 76 Civ. 4114 (LFM).**

United States District Court, S. D. New York.

Dec. 28, 1978.

Curtis, Mallet-Prevost, Colt & Mosle by John E. Sprizzo, Caren S. Brutten and Lynne H. Federman, New York City, for defendants.

Arthur N. Abbey, by Arthur N. Abbey and Stephen T. Rodd, New York City, Louis R. Koerner, Jr., P.C., by Louis R. Koerner, Jr., New Orleans, La., for plaintiff.

## OPINION

MacMAHON, District Judge.

Defendants move under Rule 56(b), Fed. R.Civ.P., for summary judgment dismissing the complaint. Plaintiff cross-moves for partial summary judgment on the issues of liability and personal jurisdiction, or, in the alternative, for a preliminary hearing to determine the issue of personal jurisdiction. Rules 56(a), 12(d), Fed.R.Civ.P.

Plaintiff alleges that Hugh H. Aiken, an officer of plaintiff, met with Claude Lambert, vice-president of Lambert Freres et Cie. ("LFC") in Paris in 1973 to discuss the possibility of the two companies engaging in a joint venture to acquire an interest in Marquette Cement Manufacturing Company ("Marquette"). Aiken presented a study he had prepared analyzing the American cement industry and concluding that Marquette would be an attractive investment. The parties dispute whether any enforcible agreement concerning the joint venture resulted from this meeting, but plaintiff alleges that Lambert agreed that LFC would not independently seek to enter the American cement industry without compensating plaintiff for the use of its study.

Still attempting to reach agreement on a proposed joint venture, Aiken met in New York City on February 13, 1974 with Robert Boubil, Claude DeMougin and Jacques Hoffmeyer, who, as representatives of LFC, offered plaintiff $200,000 for all rights to the study. This offer was refused, apparently because Aiken and plaintiff desired to retain a percentage of any venture which would seek to acquire Marquette. Soon after this meeting, communications between plaintiff and LFC substantially ceased.

Representatives of LFC met with representatives of Marquette and the Southdown Corp. ("Southdown"), another cement firm,

between December 1974 and June 1975, in an attempt to negotiate the purchase of Marquette or Southdown or both. During this period, some five or six meetings were held in New York City with Claude Lambert present at some, and attorneys and business consultants for LFC present at others. Marquette and Southdown were represented at the meetings by their respective presidents. LFC never purchased either of these companies. Plaintiff claims, nevertheless, that in attempting to acquire them, LFC used the information contained in its study but failed to compensate plaintiff.

On the basis of these facts, plaintiff alleges four theories of recovery: (1) breach of contract; (2) tortious interference with contractual rights; (3) breach of a joint venture agreement; and (4) quasi-contract.

Plaintiff's cross-motion for partial summary judgment or a preliminary hearing on the issue of personal jurisdiction is denied. Defendants unsuccessfully raised this issue by a motion to dismiss in April of this year.[1] The issue has therefore been decided and will not be relitigated.[2]

Defendants argue in support of their motion for summary judgment dismissing the complaint that New York law governs this action and that the New York statute of frauds[3] provides a complete defense. Plaintiff contends that French law governs and that it does not require a writing, and that plaintiff is therefore entitled to summary judgment on liability.

A federal court sitting in a diversity case must apply the choice of law rules of the state in which it sits.[4] New York has adopted a "center of gravity" or "grouping of contacts" theory with respect to choice of

1. *Transatlantic Cement, Inc. v. Lambert Freres et Cie,* 448 F.Supp. 816 (S.D.N.Y.1978).

2. See *Riss & Co. v. Association of Western Rys.,* 162 F.Supp. 69, 72 (D.C.D.C.1958); *Molesphini v. Bruno,* 26 F.Supp. 595, 596 (E.D.N.Y. 1939); 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 12.14 at 2336–37 (1975).

3. N.Y.Gen.Oblig. Law § 5–701(10) (McKinney 1978).

4. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

law problems in the area of contracts [5] and applies the law of the jurisdiction " 'which has the most significant contacts with the matter in dispute.' " [6]

■ Defendants are both French citizens, and preliminary negotiations took place and the alleged agreement was made in Paris. The only relevant event occurring in New York was the February 1974 meeting which led to the final break between plaintiff and LFC. LFC's negotiations with Marquette and Southdown in New York cannot properly be considered because these were the very events alleged to constitute breach of the agreement. Finally, the facts that Marquette stock was traded on the New York Stock Exchange and that an investment in Marquette would have to be made through that exchange cannot be given much weight. The stock of thousands of companies is traded on the New York Stock Exchange, and we cannot conclude that this should lead to the application of New York law to agreements to invest in these companies made outside New York.

We conclude, therefore, that on balance France had the more significant contacts with the transaction involved.

■ Plaintiff's claim of joint venture is governed by Articles 1832 through 1834 of the French Civil Code.[7] Article 1834 expressly forbids testimonial proof of a joint venture where the objective of the venture has a value greater than fifty francs. Since it is undisputed that there is no written agreement of joint venture, we conclude that defendants are entitled to summary judgment dismissing plaintiff's claim of a joint venture.

■ Plaintiff's remaining claims are governed by the general French Statute of Frauds, Civil Code Articles 1341, 1347, 1348. Although Article 1341 prohibits testimonial proof of all agreements with a value in excess of fifty francs, Article 1348 expressly excepts quasi-contracts and torts from this requirement. Additionally, Article 1347 allows testimonial proof where there has been a "commencement of proof by writing." A "commencement of proof by writing" requires a writing by the party against whom it is offered that tends to make the fact alleged probable.[8] Plaintiff has submitted a letter from Lambert, dated March 5, 1974, which inferentially acknowledges the existence of an agreement between plaintiff and defendants, and we conclude that this letter constitutes a "commencement of proof by writing."

■ Genuine issues of fact exist respecting the three remaining claims, since the parties contest whether any agreement was in fact reached and whether defendants wrongfully used plaintiff's report. We therefore deny summary judgment to both sides on the three remaining claims.

Accordingly, plaintiff's motion for summary judgment on the issue of personal jurisdiction is denied. Defendants' motion for summary judgment is granted to the extent that plaintiff seeks to recover for breach of a joint venture agreement, and denied in all other respects. Plaintiff's motion for partial summary judgment on the issue of liability is denied in all respects.

So ordered.

### APPENDIX

From The French Civil Code, translated by John H. Crabb (1977).

"Art. 1341—*Law of 1 April 1928; Law of 21 Feb. 1948*—An instrument must be executed before notaries or under private signatures for all things exceeding the sum or value of 50 francs, even for voluntary bailments, and no evidence by witnesses against and outside of the content of instruments is allowed, nor as to what

5. *Auten v. Auten*, 308 N.Y. 155, 160, 124 N.E.2d 99, 101–02 (1954); *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 382, 300 N.Y.S.2d 817, 825, 248 N.E.2d 576, 582 (1969).

6. *Auten v. Auten, supra*, 308 N.Y. at 160, 124 N.E.2d at 102.

7. See annexed Appendix for translations of all French statutes referred to herein.

8. 2 M. Planiol & G. Ripert, Treatise on the Civil Law, No. 1124 at 640 (1939).

is alleged to have been said before, at the time of, or after the instruments, even when it is a question of ρ sum or value of less than 50 francs.

All this is without prejudice to what is prescribed in the laws relative to commerce."

"Art. 1347—Prima facie written evidence creates an exception to the above rules.

It is thus with any writing which emanates from him against whom the claim is brought, or from him whom he represents, and which makes probable the fact alleged.

*Law no. 75–596, 9 July 1975, Art. 3.* There may considered [*sic*] by the judge as equivalent to prima facie written evidence the declarations made by a party at the time of his personal appearance, his refusal to answer or his absence at the appearance."

"Art. 1348—There is a further exception any time that it is not possible for the creditor to procure documentary evidence of the obligation which has been contracted toward him.

This second exception applies:

1° To obligations born of quasi-contracts and of delicts or quasi-delicts (torts);

2° To bailments of necessity made in case of fire, destruction, tumult or shipwreck, and those made by travellers while lodging at an inn, all according to the capacity of the persons and the circumstances of the act;

3° To obligations contracted in case of unforseen [*sic*] accidents, when it would not have been possible to put things in writing;

4° In the case where the creditor lost the paper which served as documentary proof for him as the result of a fortuitous event, unforeseen and resulting from an overpowering force."

"Art. 1832—A partnership is a contract whereby two or more persons agree to engage something in common, with a view of sharing the benefit which may result therefrom."

"Art. 1833—Any partnership must have a licit objective and be contracted for the common interest of the parties.

Each partner must bring thereto either money or other assets or his skill."

"Art. 1834 *Law of 21 Dec. 1930; Law of 21 Feb. 1948*—All partnerships must be set up in writing when their objective is of a value greater than 50 francs.

Testimonial evidence is not allowed against and outside the content of an instrument of partnership, nor on what might be alleged to have been said before, at the time of and since such instrument, although it be a question of a sum or value of less than 50 francs."