◼ In the Matter of the Acquisition of Real Property by the COUNTY OF TOMPKINS, Respondent. MAHLON R. PERKINS, Appellant. [654 NYS2d 849] —Mikoll, J. P. Appeal from an order of the Supreme Court (Rumsey, J.), entered October 17, 1995 in Tompkins County, which, in a proceeding pursuant to EDPL article 4, granted petitioner's application to acquire certain real property for flood control purposes.

Petitioner has acquired by eminent domain 20.54 acres of respondent's land to be used to accommodate a spillway related to a flood control project involving the construction of a 68-foot-high earthen dam. In granting the petition to acquire the land, Supreme Court found that the acquisition was made in a timely manner, that petitioner was not required to comply with the requirements of the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA) and that petitioner had complied with Agriculture and Markets Law § 305.

Respondent has mounted a two-pronged challenge to the

proceeding. The first is based on petitioner's failure to comply with SEQRA's requirements that findings relating to the environmental impact of the project be made (*see*, 6 NYCRR 617.11), and the second with petitioner's failure to comply with the requirements of EDPL article 2 in failing to hold a public hearing prior to acquiring additional private land for public use.

The underlying facts are as follows. In July 1989, petitioner entered into an agreement with the US Department of Agriculture Soil Conservation Service (hereinafter SCS) pursuant to which petitioner, as lead agency, was to secure land rights and flooding easements to build the earthen dam (hereinafter the plan). The plan and an environmental impact statement (hereinafter EIS) were prepared and approved on February 15, 1990. By spring of 1991, petitioner approved a plan for acquiring property rights to land surrounding the dam site. Purchase offers were made on May 5, 1992. In 1993, SCS determined that an additional 23.29 acres were needed for the proposed spillway based on evaluations of the dam design from experiences at other dam sites. In March 1994 SCS notified petitioner that the EIS did not have to be revised under the National Environmental Protection Act as the change was based on the alteration of the emergency spillway design. Petitioner did not obtain a revised EIS.

The necessary land was obtained by purchase of 2.75 acres from two landowners. Negotiations for the purchase of 20.54 acres from respondent were begun. By resolution of March 21, 1994 petitioner offered respondent $850 per acre, which was rejected. Eminent domain proceedings were then initiated. Petitioner filed the instant petition seeking an order authorizing the filing of an acquisition map in the office of the Tompkins County Clerk and, thus, vesting title to the land in petitioner. Supreme Court granted the petition and this appeal by respondent ensued.

We reject respondent's challenge based on petitioner's failure to make SEQRA findings as fatal to the eminent domain proceeding to acquire his land. This issue is not properly before us. Respondent's challenge should have been made by way of a CPLR article 78 proceeding. The time to challenge such decision arose in March 1994 when petitioner failed to prepare a new EIS. CPLR article 78 carries a four-month Statute of Limitations (CPLR 217 [1]) which bars the instant challenge.

Supreme Court further found that petitioner was exempt from the public hearing requirements of EDPL article 2 under EDPL 206 (A) because the dam project was prepared in accor-

dance with Federal legislation and because reviews of the project site and alternatives for implementation were held with the Department of Environmental Conservation, the US Fish and Wildlife Service, and the US Forest Service, the State Historic Preservation Office and the State Archeologist.

The factors to be considered under EDPL 204 (B) were discussed at length in the EIS which was prepared in conjunction with SCS pursuant to the requirements of the Federal Watershed Protection and Flood Prevention Act (16 USC ch 18). The draft EIS was forwarded to a variety of State and Federal agencies affording these agencies an opportunity to comment on the draft EIS prior to adoption of the final EIS. The EIS was submitted to SCS which approved the plan and agreed to partially fund the project. This approval of the project for funding constituted "other similar approval" from a Federal agency exempting petitioner from conducting additional public hearings pursuant to EDPL article 2 (*see, e.g., Matter of Rockland County Sewer Dist. No. 1 v J. & J. Dodge*, 213 AD2d 409; *Matter of Anderson v National Fuel Gas Supply Corp.*, 105 AD2d 1097).

Respondent argues that if this Court finds, as it has, that no further public hearing is required under EDPL article 2, then the petition is time barred pursuant to EDPL 401 (D) because the additional land was acquired due to new engineering requirements and not to field conditions, as petitioner urges. We disagree. Pursuant to EDPL 401, all acreage required for a proposed public project must be acquired within three years after a public hearing, the date of the order or completion of the procedure that constituted the basis of the EDPL 206 exemption, or the entry of the final order or judgment on judicial review, unless the additional acreage was needed because of field conditions. Although the term "field conditions" is not defined by EDPL 103, Supreme Court did not err in finding that the additional land was required because of "field conditions" as that term is employed in the statute. Petitioner became aware of the need for additional acreage because of experience acquired with dams similar to the one to be constructed here which indicated that a change in the plans was necessary.

Respondent's claim that petitioner did not negotiate with him in good faith pursuant to EDPL article 3 prior to seeking title to the property under EDPL article 4 is without merit. EDPL article 3 requires that the condemnor obtain an appraisal of the property and, based upon that appraisal, make an offer to the owner of the property before instituting eminent

domain proceedings. Here, petitioner obtained an appraisal in 1991 and made respondent an offer to purchase the property at $850 per acre based upon that appraisal. Respondent failed to accept the offer and did not provide petitioner with an appraisal of his own. Petitioner was then free to commence the instant eminent domain proceeding in March 1995. We find no reason to disturb Supreme Court's finding on this issue.

Lastly, respondent contends that petitioner did not comply with Agriculture and Markets Law § 305, which requires that adverse agricultural impacts be minimized or avoided, because petitioner did not conduct an environmental analysis required by SEQRA and failed to do a thorough agricultural impact analysis, as required by Agricultural and Markets Law § 305. Again we disagree. The record indicates that a letter dated October 11, 1994 sent by Stephen Harausz, First Deputy Commissioner of Agriculture and Markets, to petitioner acknowledged receipt of petitioner's final notice of intent to institute eminent domain proceedings against respondent and indicated that the project should not have an unreasonably adverse effect on the continuing viability of farm enterprises within the district or on the State environmental plans, policies and objectives. The letter also indicates that petitioner had fulfilled all the requirements of Agriculture and Markets Law § 305 (4) and that petitioner should file the appropriate certification at least 10 days before commencing eminent domain proceedings. This certification was sent on October 20, 1994. Thus, Supreme Court's finding that petitioner complied with Agriculture and Markets Law § 305 (4) should not be disturbed.

Crew III, Yesawich Jr., Spain and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs.