602

[906 NYS2d 735]

In the Matter of VILLAGE OF SARANAC LAKE, Petitioner, Relative to Acquiring Real Property in the Village of Saranac Lake. WAYNE BUJOLD et al., Respondents.

In the Matter of VILLAGE OF SARANAC LAKE, Petitioner, Relative to Acquiring Real Property in the Village of Saranac Lake. JOHN S. BANTA et al., Respondents.

In the Matter of VILLAGE OF SARANAC LAKE, Petitioner, Relative to Acquiring Real Property in the Village of Saranac Lake. EDWARD J. DUKETT et al., Respondents.

In the Matter of VILLAGE OF SARANAC LAKE, Petitioner, Relative to Acquiring Real Property in the Village of Saranac Lake. KNABE HOUSE, L.L.C., et al., Respondents.

In the Matter of VILLAGE OF SARANAC LAKE, Petitioner, Relative to Acquiring Real Property in the Village of Saranac Lake. LAKESIDE HOUSE, INC., et al., Respondents.

In the Matter of VILLAGE OF SARANAC LAKE, Petitioner, Relative to Acquiring Real Property in the Village of Saranac Lake. JOSEPH E. FIORILE et al., Respondents.

Supreme Court, Franklin County, August 17, 2010

## APPEARANCES OF COUNSEL

*Harris Beach PLLC* (*Douglas A. Foss* and *Dennis D. Curtin* of counsel), for petitioner. *Flink Smith LLC* (*Edward B. Flink, Paul J. Campito* and *Jeffrey D. Wait* of counsel), for Wayne Bujold and others, respondents. *Fischer, Bessette, Muldowney & Hunter, LLP* (*John J. Muldowney* of counsel), for John S. Banta and others, respondents. *Carl J. Madonna* for Edward J. Dukett, respondent. *Guy J. Hayward* for Knabe House, L.L.C., respondent.

## OPINION OF THE COURT

DAVID DEMAREST, J.

These eminent domain proceedings were initiated by the Village of Saranac Lake (Village) to secure easements for the repair and reconstruction of a sewer line along the shore of Lake Flower. Although the sewer line had been in place for many years, there is no record of the Village ever having obtained easements for its construction and repair.

These proceedings are actually the second attempt to obtain easements, the first having been dismissed for procedural deficiencies.* This court found that the first proceedings, pursuant to New York's Eminent Domain Procedure Law § 402 (B), failed to establish the Village complied with EDPL article 2, requiring a public hearing, or that it was exempted from complying. A proceeding pursuant to EDPL 207 was also initiated by the respondents in the Appellate Division, Third Department, but

---

* *Village of Saranac Lake v Banta*, Sup Ct, Franklin County, June 3, 2005, index No. 2004-967.

was dismissed on the basis of lack of viability in view of this court's decision dismissing the underlying petitions.

The current proceedings were brought by order to show cause, pursuant to EDPL 402 (B) (6), seeking immediate emergency access to the property in order to complete the work. Based upon the Village's representation in the papers in support of the order to show cause, access was granted, thereby eliminating the need to conduct a public hearing and comply with the other mandates of EDPL article 2.

Although the repairs have been completed, several issues remained for resolution, and in a decision and order dated April 18, 2006, it was ordered that a hearing be held to determine whether there was the need of the Village to take a uniform 30-foot easement and what takings would be necessary for upkeep and maintenance.

The second issue to be determined was whether or not the Village complied with EDPL 301 and 303, requiring good faith negotiations for compensation for the property taken. Finally, the rights of the parties to seek attorney's fees and costs were preserved for determination after the hearing or in subsequent proceedings to determine compensation. The decision held that the Village's "fatally flawed initial E.D.P.L application need not be disregarded in determining an award of costs and attorney's fees."

A hearing was held on December 4 and 5, 2006 and July 24 and 25, 2007. The parties were able to eventually agree on the descriptions of the various easements, including width and location, and the particular language of the easement documents to be filed. Several respondents agreed on the valuation of the easements while others reserved their rights to seek compensation in a subsequent hearing pursuant to the EDPL. All respondents reserved their rights to seek ancillary damages relief and an award of counsel fees and costs.

By notice of motion dated April 17, 2009, petitioner moved for orders of acquisition and condemnation for the easements as agreed. By notice of cross motion dated June 3, 2009, the respondents Wayne Bujold and Denise A. Wilson, formerly known as Denise A. Bujold, (Bujolds) moved for an order establishing the easements in accordance with the stipulations made; approving the specific language of the easement documents; declaring the petitioner failed to comply with EDPL 301 and 303; issuing a final order of condemnation; directing the commencement of the appraisal process; directing a hearing to

establish the amount of damages sustained as a result of the entry on their property; and, awarding legal fees and costs pursuant to the prior order of this court, article 7 of the EDPL and part 130 of the Rules of the Chief Administrator of the Courts (22 NYCRR).

By notice of cross motion dated June 5, 2009, and amended notice of cross motion dated June 19, 2009, the respondent Edward Dukett (Dukett) moved for similar relief. Respondents Joseph E. Fiorile (Fiorile), John S. Banta and Linda Banta (Bantas), and Lakeside House, Inc. (Lakeside) also seek the same relief pursuant to a notice of cross motion dated June 18, 2009.

The parties were able to eventually agree on the language of the easements, and orders of condemnation have all been signed and entered. The remaining issue to be determined is whether or not the respondents are entitled to an award of counsel fees and disbursements pursuant to article 7 of the EDPL and/or an award of sanctions pursuant to part 130 of the Rules of the Chief Administrator of the Courts. The respondents allege they are entitled to be reimbursed for the expenses incurred in this litigation because the Village violated EDPL 301 and 303 in failing to make every reasonable and expeditious effort to justly compensate persons for land to be acquired by negotiation and agreement. They also claim the Village improperly commenced the second eminent domain proceedings pursuant to EDPL 402 (B) (6) by falsely claiming an emergency existed thereby justifying immediate use of the respondents' properties.

## Applicable Law

EDPL 301 states: "The condemnor, at all stages prior to or subsequent to an acquisition by eminent domain of real property necessary for a proposed public project shall make every reasonable and expeditious effort to justly compensate persons for such real property by negotiation and agreement."

EDPL 302 provides that "[r]eal property to be acquired by the exercise of the power of eminent domain shall be appraised on behalf of the condemnor by an appraiser."

EDPL 303 is entitled "Offer" and states:

"The condemnor shall establish an amount which it believes to represent just compensation for the real property to be acquired. The condemnor shall make a written offer to acquire the property for one hundred per centum of the valuation so established. Wherever practicable, the condemnor shall make

the offer prior to acquiring the property and shall also wherever practicable, include within the offer an itemization of the total direct, the total severance or consequential damages and benefits as each may apply to the property."

EDPL 402 (B) (6) permits immediate entry upon the real property to be taken "[w]hen it appears to the satisfaction of the court at any stage of the proceedings, that the public interests will be prejudiced by delay."

EDPL 702 (B) provides:

"In the event that . . . a court of competent jurisdiction determines that the condemnor was not legally authorized to acquire the property, or a portion of such property, the condemnor shall be obligated to reimburse the condemnee, an amount, separately computed and stated, for actual and necessary costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, and other damages actually incurred by such condemnee because of the acquisition procedure."

### Findings of Fact

Although the parties were able to negotiate a partial settlement as to the size and location of the easements and the language of the easement documents, there was a vigorous presentation of evidence at the hearing on the ancillary issues as to the propriety of the acquisition process itself. Based upon the evidence presented, the following findings of fact are made:

1. In January 2004 the Village was advised by its attorney of the requirements of the EDPL in acquiring property for the sewer project including: the need to hire an appraiser to determine an offer that would represent just compensation; that written offers had to be made to each owner; and that a public hearing must be held before it could proceed.

2. Rather than obtain individual appraisals, the Village Board, relying on an oral "preliminary" appraisal, determined that no compensation would be offered to owners, and for those owners who refused to sign easements, a standard offer of $1,000 per parcel would be made without regard to the width, length or composition of the land to be taken. Possible consequential damages were not considered.

3. There was never a "final appraisal" made before any offers were made and no effort has ever been made by the Village to

"make every reasonable and expeditious effort to justly compensate persons for such real property by negotiation and agreement." (EDPL 301.) It was the stated policy of the Village not to negotiate at all.

4. Serious misrepresentations were made to this court in the application for emergency access pursuant to EDPL 402 (B) (6).

a. Although it was argued that the line needed to be constructed immediately because of the potential for high water levels in the spring, in fact, the water levels are controlled by a dam owned by the Village and water levels were lowered to accommodate construction.

b. A letter from the New York State Department of Environmental Conservation (DEC) dated July 18, 2005 was used by the Village to demonstrate that significant enforcement activities would be brought against it if the line was not immediately fixed. Actually, there was never any violation of any consent order with the DEC, no enforcement proceedings were then contemplated, the Village had some two years to complete the project and the letter was only sent at the behest of Village officials, obviously to be used to bolster the argument for emergency access.

c. It was alleged by the Village that the project needed to begin immediately in order to obtain favorable financing. In fact, financing was available through October 6, 2006, and the actual time needed to complete the work was a few months.

5. The Village determined that all easements needed to be 30 feet wide without taking into account the topography, vegetation or prior uses of the individual parcels. There was no good faith attempt to determine whether 30-foot easements were necessary and indeed, testimony of the Village's engineers indicated that the project could be completed, at least in part, with narrower easements.

6. Although emergency immediate access was granted to the Village and the necessary repairs and rebuilding have been completed, it is found that the Village was never legally authorized to acquire the property because of its failure to follow proper procedures and its misrepresentations to the court.

## Discussion

EDPL article 3 is very clear that a condemnor is required to obtain an appraisal of the property to be taken and to make a written offer based upon that appraisal before instituting

eminent domain proceedings. (*Matter of County of Tompkins [Perkins]*, 237 AD2d 667 [3d Dept 1997].) That was not done in either of these proceedings or those which were previously dismissed. There is no question as to whether the Village negotiated in "good faith," for the evidence establishes there were never any negotiations. (*Matter of National Fuel Gas Supply Corp. v Town of Concord*, 299 AD2d 898 [4th Dept 2002].) The respondents, nevertheless, were forced to expend resources to establish the impropriety of the Village's actions.

Similarly, the respondents successfully established that the Village's application for emergency immediate possession of their lands was flawed and were the true facts known to the court, the relief would not have been granted. Thus, it has been established that the Village lacked the initial authority to pursue the proposed acquisition. The settlements essentially remedy this impediment, permitting the Village to have its easements without starting the process over. The project is over, but now the appraisal process and eventual valuation of the easements must be determined. Having successfully challenged the proposed acquisitions, however, the respondents are entitled to be reimbursed for the actual and necessary costs, disbursements and expenses including attorney's fees. (EDPL 702 [B].)

The Court of Appeals decision in *Hargett v Town of Ticonderoga* (13 NY3d 325 [2009]) establishes clearly that EDPL 702 (B) provides a basis for the award of attorney's fees and expenses in this situation. In that case, it was held that the petitioner, having successfully challenged the condemnor's authority to pursue the proposed acquisition, was entitled to reimbursement for expenses and that the statute was not limited to the vesting proceeding where the condemnor's offer is proved inadequate. It was held that fees and costs incurred by a condemnee in challenging an adverse determination are a result of the "acquisition procedure" and, therefore, recoverable.

In order to " 'guarantee fair treatment of condemnees as unwilling litigants who find their property subject to a condemnor's power of eminent domain,' " the Eminent Domain Procedure Law specifically provides for the recovery of additional allowances and expenses. (*General Crushed Stone Co. v State of New York*, 93 NY2d 23, 27 [1999], quoting Law Rev Commn Mem in Support of L 1987, ch 771; EDPL 701, 702.) The respondents' expenses in defending their rights will necessarily diminish any compensation they might ultimately receive for the taking, and they should not have to bear the costs

incurred in exposing the Village's improper tactics. (*Matter of Town of Babylon v SCTM 0100-76-01-008 [Ravich Realty Corp.]*, 201 AD2d 573 [2d Dept 1994].)

It is therefore the decision of this court and it is hereby ordered:

1. The applications of the respondents for an award of reasonable expenses and costs, including attorney's fees in defending the acquisition process in both the 2004 and 2005 proceedings, are granted.

2. Those parties who are not seeking a determination of valuation of the taking may submit their requests for an award, upon notice to the petitioner. The petitioner shall have 30 days to respond, and, if necessary, a hearing will be convened to determine the amount to be paid.

3. Those parties seeking a determination of valuation shall be permitted to include their requests for fees and disbursements in that proceeding for determination.

4. In light of this decision, respondents' request for sanctions pursuant to part 130 of the Rules of the Chief Administrator of the Courts is denied.