■ Georgia W. Babcock, Appellant, v. Mabel B. Jackson, as Executrix of William H. Jackson, Deceased, Respondent.

Appeal (1) from an order of the Supreme Court at Special Term, entered October 6, 1961, in Monroe County, which granted a motion by defendant for an order dismissing the complaint pursuant to rule 106 of the Rules of Civil Practice and (2) from the judgment entered thereon.

Judgment and order insofar as appealed from affirmed.

Halpern, J. (dissenting). The plaintiff and the defendant's testator (hereinafter referred to as the defendant) were both residents of the City of Rochester, New York. The plaintiff and the defendant started from Rochester on a trip which took them through the Province of Ontario. The defendant was the owner and operator of the automobile used on the trip; the plaintiff was a passenger. While the automobile was being driven in Ontario on September 16, 1960, the car went out of control, left the highway, and collided with a stone wall. No collision with any other vehicle was involved. The plaintiff suffered serious personal injuries as a result of the accident.

Upon their return to New York State, the plaintiff instituted the present action against the defendant to recover for her injuries. The defendant moved to dismiss the complaint upon the ground that the Ontario guest statute barred

a recovery. The Special Term granted the motion and judgment was accordingly entered unconditionally dismissing the complaint.

The Ontario statute (Ontario Highway Traffic Act, § 105, subd. 2; Rev. Stat. of Ontario [1960], ch. 172, § 105, subd. [2]) reads: " (2) Notwithstanding subsection 1, the owner or driver of a motor vehicle, other than a vehicle operated in the business of carrying passengers for compensation, is not liable for any loss or damage resulting from bodily injury to, or the death of, any person being carried in, or upon, or entering or getting on to, or alighting from such motor vehicle."

If this case had arisen a decade ago, there would have been no question but that Ontario law governed the case. Under the choice-of-law rules then generally accepted, the law of the place of the accident governed and, once it appeared that the accident had occurred in Ontario, it would have been held automatically that the Ontario guest statute applied. But under the modern view now prevailing in many States and, in large measure, adopted in this State in *Kilberg* v. *Northeast Airlines* (9 N Y 2d 34) this result no longer necessarily follows. The courts have come to realize that, in many cases, even though the accident and the resulting injury occurred in a single State, other States may have "significant contacts with the matter in dispute" and that such States may be justified in applying their own law and policy to the issues as to which they have "the most significant contacts". (Cf. *Auten* v. *Auten,* 308 N. Y. 155, 160.) (The word " State " will be used in this opinion for convenience as including both foreign countries and the States of this country.) There may be multi-State contacts even though the tort was physically committed in a single State. Thus, in a case like the present one, in which the relationship of guest and host was created by an arrangement made in New York between New York residents, New York clearly has a vital interest in the determination of the incidents of the relationship. This has long been recognized in the workmen's compensation cases in which the view that the law of the place of the injury was solely controlling was abandoned many years ago, and the legitimate interest of the State in which the employment relationship was created was given recognition. (*Alaska Packers Assn.* v. *Comm.,* 294 U. S. 532; *Matter of Nashko* v. *Standard Water-Proofing Co.,* 4 N Y 2d 199, 201; 2 Larson, Workmen's Compensation Law, §§ 86, 87.)

Under the modern view, in a common-law tort action, the law of the State which has " the most significant contacts with the matter in dispute " and which has the dominant interest in it is accepted as the governing law. This is the doctrine of " the proper law of the tort " (Morris, Proper Law of a Tort, 64 Harv. L. Rev. 881; Stumberg, Place of the Wrong, 34 Wash. L. Rev. 388). It represents, in effect, an extension to the law of torts of the " center of gravity " theory adopted by the Court of Appeals in *Auten* v. *Auten* (308 N. Y. 155, *supra*) and approved by the American Law Institute in the Restatement of Conflict of Laws 2d (§ 332), with respect to the law of contracts. (See Note on the *Kilberg* case, 46 Cornell L. Q. 637; 1961 Annual Survey of American Law, p. 45, Leflar.) " The merit of [this] approach is that it gives to the place 'having the most interest in the problem' paramount control over the legal issues arising out of a particular factual context, thus allowing the forum to apply the policy of the jurisdiction 'most intimately concerned with the outcome of [the] particular litigation'". (*Auten* v. *Auten, supra,* p. 161.) There is even less reason in tort cases than there is in contract cases to sacrifice the legitimate policy interests of the State "most intimately concerned" with the case to the abstract objectives of " certainty and predictability", which concededly are more readily attainable by "rigid general rules" (cf. *Auten* v. *Auten, supra,* p. 161).

In our case, there can be no doubt but that New York had the most significant contacts with the matter in controversy and the dominant interest in it. The plaintiff and the defendant were residents of this State; the arrangements for the trip were made in New York; their trip was initiated here and was expected to terminate here. The defendant's automobile was kept by him regularly in New York and was subject to New York's compulsory insurance law.

The question of whether a guest should be barred from recovering from his host for the host's negligence in the operation of his automobile is a question of policy to be decided by the appropriate legislative body. New York's policy is in favor of allowing a recovery by the gratuitous passenger. The New York Legislature has repeatedly refused to enact a statute denying or limiting the right of a guest to recover from his host (for the latest attempt, see Senate Introductory No. 3662, Pr. No. 3967, 1960 Session, which died in Committee). Ontario's policy, since 1935 (ch. 26, § 11, Statutes of 1935), has been contrary to that of New York, denying recovery to a gratuitous passenger even for gross or wanton negligence. The Ontario statute is sweeping in its terms. No other Province of Canada has such a sweeping statute and no State in this country has a guest statute in terms as broad as those of the Ontario statute. Indeed, it has been held in this country that a statute couched in such terms is unconstitutional (*Stewart* v. *Houk,* 127 Ore. 589; see Ann. 111 A. L. R. 1011).

The primary purpose of the Ontario statute was stated by an academic commentator, shortly after its enactment, as follows: " Undoubtedly the object of this provision is to prevent the fraudulent assertion of claims by passengers, in collusion with the drivers, against insurance companies " (Survey of Canadian Legislation, 1 U. Toronto L. J. 358, 366 [1935]). In the light of this purpose, it is apparent that the interest of Ontario in the enforcement of its legislative policy is limited to accidents involving Ontario residents. Ontario is concerned only with the adverse effect of guest-host recoveries upon Ontario insurance premiums. Ontario insurance premiums would not be affected by a recovery chargeable against an insurance policy issued in a foreign jurisdiction covering a foreign car. At any rate, the interest of Ontario in having its policy apply to nonresidents traveling through Ontario is a minimal one.

The interest of New York is obviously the dominant one as to this issue. New York has a strong interest in the application of its policy allowing a recovery by guest passengers, to an accident involving New York residents who were injured while traveling in an automobile registered and insured in New York, upon a trip originating and terminating in New York, under an arrangement made in New York. It would be against the strong public policy of New York to apply a foreign statute denying a guest the right to recover from his host to a case in which New York plainly had the dominant interest. As the Court of Appeals said in *Kilberg* v. *Northeast Airlines* (9 N Y 2d 34, 39) " Modern conditions make it unjust and anomalous to subject the traveling citizen of this State to the varying laws of other States through and over which they move. * * * The place of injury becomes entirely fortuitous. Our courts should if possible provide protection for our own State's people against unfair and anachronistic treatment of the lawsuits which result from these disasters."

The Ontario guest statute, as interpreted by the Ontario courts, does not rest upon any notion that negligence on the part of a host driver causing injury to his passenger is not wrongful. The statute does not purport to give a license to drivers to operate their vehicles negligently to the injury of their passengers. Negligent driving is a breach of a duty owing to the passengers as well as to others within the zone of danger but the statute denies a remedy to the passengers, for reasons of policy which appealed to the Ontario Legislature. As

the Ontario courts held shortly after the enactment of the guest statute in 1935: " The plain meaning of that statute is that a passenger or the dependent of the passenger has now no remedy against an owner or a driver of a motor vehicle for damages for injury or death caused by his negligence" (*Quick* v. *Robinson*, [1936], Ont. W. N. 490, 492–493). The meaning of the Ontario statute was again elucidated in *Coutts* v. *Smith* ([1949] Ont. W. N. 155). The effect of the Ontario guest statute, the court said, was that " the plaintiff was precluded from recovering", despite a finding by the trial court that the driver had been negligent with respect to his passenger. These statements by the Ontario courts make it clear that the Ontario guest statute is an expression of state policy with respect to conduct which is concededly wrongful.

The problem in this case can be stated as a question of characterization or classification, the answer to which may determine the selection of the choice-of-law rule to be applied. The question in this case is not one of ordinary tort law, dealing with rules of conduct, as to which, under the traditional view, the law of the place of the wrong is controlling. The question is rather one of State policy with respect to the incidents to be attached to the relationship of guest and host. As to this question, the policy of the State in which the relationship was created should be held to be controlling, even under the traditional view (cf. *Dyke* v. *Erie Ry. Co.*, 45 N. Y. 113).

The law of Ontario will undoubtedly be controlling, in determining whether the defendant was guilty of negligence in the manner in which he operated his automobile. The State in which the accident occurred has the most significant contacts with, and the dominant interest in, issues of that kind. The rules of conduct laid down by the laws of each State (sometimes referred to as admonitory laws) must be obeyed, not only by the permanent residents of the State but also by persons temporarily residing in the State or traveling through it. Conversely, all the persons within the State have the right to rely upon the rules of conduct laid down by the laws of the State as guide lines for their behavior. Therefore, the question of whether the defendant's conduct was wrongful or innocent must be determined by the law of the place of the alleged wrong. But that law is not necessarily controlling with respect to other questions of law or policy which may be involved in the case. Once it is determined by the law of the State in which the accident occurred that the defendant's conduct was wrongful, the question of the availability of a remedy for the wrong and the extent of the remedy and its collateral incidents may well be determined by the law of some other State. The law and policy of the State having the most significant contacts and the dominant interest with respect to the particular issue should govern. The leading illustration of the application of this principle in New York State is the *Kilberg* case. It was there held that the limitation of damages in a death action fixed by the law of the place of the occurrence of the accident would not be applied to an action in the courts of this State brought against an airline company for the death of a resident of this State which occurred upon a trip originating in this State, but that the New York law and policy would be applied instead.

In other States, the principle has been applied to many other issues of substantive law in tort actions. Thus it has been held that the question of the survival of a personal injury claim upon the death of the tort-feasor should be determined by the law of the tort-feasor's domicile rather than by the law of the fortuitous place of the happening of the accident (*Grant* v. *McAuliffe*, 41 Cal. 2d 859; Currie, Survival of Actions: 10 Stan. L. Rev. 205; cf. *Herzog* v. *Stern*, 264 N. Y. 379; *Riley* v. *Capital Airlines*, 13 A D 2d 889). Similarly, it has been held that the questions of interspousal immunity and of the right of a child to sue his parent for negligence should be determined by the law of

the residence of the parties rather than by the laws of the place of the injury (*Haumschild* v. *Continental Cas. Co.*, 7 Wis. 2d 130, overruling *Buckeye* v. *Buckeye*, 203 Wis. 248; *Emery* v. *Emery*, 45 Cal. 2d 421; *Mertz* v. *Mertz*, 271 N. Y. 466, 473; but see *Coster* v. *Coster*, 289 N. Y. 438, which followed *Buckeye* v. *Buckeye*; see Hancock, Rise and Fall of *Buckeye* v. *Buckeye*, 29 U. Chi. L. Rev. 237; Ford, Interspousal Liability for Automobile Accidents in Conflict of Laws, 15 U. Pitt. L. Rev. 397; Ehrenzweig, Parental Immunity in the Conflict of Laws, 23 U. Chi. L. Rev. 474). The right of a guest to recover from his host should likewise be determined by the law of the place in which the parties resided and in which the relationship of guest and host was created rather than by the law of the fortuitous place of the accident (see *McLean* v. *Pettigrew*, [1945] 2 D. L. R. 65; Ehrenzweig, Guest Statutes in the Conflict of Laws, 69 Yale L. J. 595; Morris, Proper Law of a Tort, 64 Harv. L. Rev. 881, 885–886).

The opinion in the *Kilberg* case gave two reasons for the decision: (1) that the Massachusetts limitation of damages in death actions was against the public policy of New York, at least as applied to a resident of New York under the circumstances of that case; (2) that the determination of the amount of the damages was a matter of procedure and not of substantive law and that therefore it was governed by the law of the forum. The second ground of the decision was withdrawn by the court in *Davenport* v. *Webb* (11 N Y 2d 392). This left only the public policy ground of the Kilberg decision in effect. Implicit in the court's reasoning, with respect to that ground, was a preliminary finding that under the circumstances of the case New York State had a dominant interest which justified it in rejecting the Massachusetts policy and applying its own policy instead. In the absence of such a finding, the New York courts would not have been justified in substituting New York's policy for that of Massachusetts (Paulsen and Sovern, "Public Policy" in the Conflict of Laws, 56 Colum. L. Rev. 969). The court emphasized at several points in its opinion the numerous significant contacts which New York State had with the case. Not only was the plaintiff's intestate a resident of New York, but the contract for the trip had been made in New York by the purchase of a ticket in New York from an airline company doing business in New York, and the contract had been partly performed in New York. The action was one between the parties to the New York created relationship. It was not an action against a third person charged with having caused an injury to the plaintiff's intestate in Massachusetts; it was an action against the carrier who had entered into the relationship of carrier and passenger in New York. Thus analyzed, the *Kilberg* case can be said to have adopted the "proper law of the tort" approach. Under that approach, the court must first find the significant contacts which give rise to the State's dominant interest and then the door is open to the application of the law and policy of the State.

The recent decision in *Davenport* v. *Webb* (*supra*) is not inconsistent with the adoption of the "proper law of the tort" approach. In that case, it appeared that the decedents, residents of New York, were killed in Maryland as a result of a collision between the automobile which one of them was driving and in which the others were riding as passengers, and a truck owned by a Virginia corporation and leased to a resident of Virginia. The only connection of New York State with the case was that the decedents were residents of the State. In that situation, there was no basis for a claim that New York State had a dominant interest in the case. The Maryland law would therefore have been applicable, even under the "proper law of the tort" approach. In the *Davenport* case, the action was brought against a third person residing in another State whose vehicle happened to have collided with the vehicle in which the plaintiffs' intestates were riding. In our case, the litigation is between New

York residents who were parties to the New York created relationship of guest and host. New York State has a vital interest in the enforcement of its policy in determining the incidents of the guest-host relationship created in New York. The "proper law of the tort" approach would recognize and give effect to this interest.

The United States Supreme Court, during its current term, has taken cognizance of the modern trend discussed above. It noted that: "Recently there has been a tendency on the part of some States to depart from the general conflicts rule in order to take into account the interests of the State having significant contact with the parties to the litigation", citing some of the cases cited *supra* and others. It accordingly construed the provision of the Federal Tort Claims Act referring to "the law of the place where the act or omission occurred", as meaning "the whole law" of the place, including its choice-of-law rules, so that there would be "a degree of flexibility [in] the law to be applied in federal courts" and the Federal courts would be free to implement the new "policy in choice-of-law rules" where the State involved had adopted it, and to apply the law of the place having the most significant contacts with the matter (*Richards* v. *United States*, 369 U. S. 1, 12–13). The Supreme Court indicated, quoting from *Vanston Committee* v. *Green* (329 U. S. 156, 161–162) that the task of the courts under this view would be to "exercise * * * an informed judgment in the balancing of all the interests of the states with the most significant contacts in order best to accommodate the equities among the parties to the policies of those states" (footnote 27).

A conflict of laws case very similar to ours dealing with the Ontario guest statute has been decided by the Supreme Court of Canada. Two residents of Quebec went on an automobile trip through Ontario. The owner of the automobile was driving it and the other Quebec resident was a passenger, when an accident occurred in Ontario because of the alleged negligence of the driver. There is no guest statute in Quebec. The court held that an action could be maintained in the courts of Quebec by the passenger to recover against his host for his injuries, notwithstanding the Ontario guest statute (*McLean* v. *Pettigrew*, [1945], 2 D. L. R. 65 *supra*). The decision was based upon the English conflict-of-laws rule that, if the act alleged to have been committed in a foreign country was actionable under the law of the forum, a recovery would be allowed for it in the forum, provided that the act charged was wrongful or, at least, was not justifiable under the law of the place where the act had been committed (*Phillips* v. *Eyre*, [1870] L. R. 6 Q. B. 1, 28–29). The Canadian Supreme Court held that, under the Ontario law, the conduct of the driver in negligently injuring his passenger was wrongful, since the Ontario statutes made any negligent driving punishable as an offense, citing Ontario Highway Traffic Act, (§ 27, now § 60). A recovery was therefore allowed. The "proper law of the tort" approach would produce the same result as the English conflicts rule in a case, like our case and like the *McLean* case, in which the forum State happened to be the State which had the most significant contacts with the matter in controversy. While it used a different route from the "proper law of the tort" approach, the Canadian Supreme Court reached the sound result of protecting the interest of the residents of other provinces, injured while traveling as passengers on trips through Ontario. We ought to try to evolve a choice-of-law rule which would reach the same result with respect to the residents of this State, and which would not give any greater effect in the courts of this State to the Ontario guest statute than the courts of the other provinces of Canada give it, with respect to injuries to their residents.

While the complaint does not contain any allegation with respect to the insurance of the defendant's automobile, it may be presumed, in view of the

fact that the defendant was a resident of New York and was subject to the requirements of the New York compulsory insurance law, that the defendant carried a standard automobile liability insurance policy in accordance with New York statute. Such a policy would cover the defendant's liability to all persons injured by his negligence, including gratuitous passengers in his automobile. The insurance premiums are computed upon the basis of the experience of insurance companies in New York State; the New York law as to the liability of insured owners to gratuitous passengers is reflected in this experience. These facts provide an additional reason for holding that the New York law should be applied to the issue of the liability of a New York host to his guest, rather than that of the place where the accident happened to have occurred (see Ehrenzweig, Guest Statutes in the Conflict of Laws, 69 Yale L. J. 595).

The same result may be reached by another line of reasoning. The relationship between the plaintiff as passenger and the defendant as host was contractual in origin. It may reasonably be inferred from the complaint that an arrangement for the joint trip was made in Rochester, New York, before the parties started out, although the exact nature of the arrangement is not alleged. If it should appear upon the trial, that there was an agreement for the sharing of the expenses of the trip, this would constitute a mutually binding contract for the breach of which an action could obviously be maintained. (Under most guest statutes, it is held that an agreement to share expenses will take the case out of the scope of the statute entirely on the ground that the passenger is then not a gratuitous one (*Smith* v. *Clute*, 277 N. Y. 407; Ann. 10 A. L. R. 2d 1351, 1373) but this holding cannot be applied to the Ontario statute in view of its broad terms [*Csehi* v. *Dixon*, [1953] 2 D. L. R. 202].) But even if it should appear that the defendant agreed to bear all the expenses and that the plaintiff was a wholly gratuitous passenger, the implied promise by the defendant to drive the automobile with care, even though gratuitous in origin, would become an enforcible one, once the plaintiff had become a passenger in the defendant's automobile in reliance upon the defendant's promise. The defendant would then be liable for any injury suffered by the plaintiff by reason of the defendant's breach of his voluntary promise (*Siegel* v. *Spear & Co.*, 234 N. Y. 479; *Glanzer* v. *Shepard*, 233 N. Y. 236, 239). The action could be brought either in contract or in tort (Restatement, Contracts, § 90; 9 N. Y. Jur., Contracts, § 66; Restatement, Torts, § 324, comment *a*, § 325). The law of New York would be the governing law of the contract, either under the traditional choice-of-law rule in contracts or under the " center of gravity " rule of *Auten* v. *Auten* (308 N. Y. 155, *supra*). If the present action were brought in contract, the plaintiff would plainly be entitled to the benefit of the New York law and the Ontario statute would not be allowed to bar a recovery. *Dyke* v. *Erie Ry.* (45 N. Y. 113) is directly in point. In that case, a passenger on a railroad trip initiated in New York and intended to terminate in New York, was held to be entitled to recover his full damages for a personal injury suffered in an accident in Pennsylvania, notwithstanding a Pennsylvania statute limiting recovery in personal injury actions against railroads to $3,000. The court said (p. 119) : " The actions are not given by the laws of Pennsylvania. They grow out of the contracts and the duties resulting from the contracts, and are given by the common law, and, therefore, the laws of another State in an action brought here cannot prescribe the measure of damages, or limit the liability of the parties ".

This theory was not available in the *Kilberg* case because that case involved an action for wrongful death, not maintainable at common law but maintainable only under the death statute of the place where the accident causing the death occurred. As the Court of Appeals noted in its opinion: " If the alleged con-

tract breach had caused injuries not resulting in death, a New York-governed contract suit would, we will assume, be available" (9 N Y 2d 34, 38).

Even though the present action was brought in tort, the New York law is still the governing law. Again, the *Dyke* case is directly in point. The action in that case was an ordinary action for damages for personal injuries, like the present one. The court said (p. 118): "Whether the actions are regarded as actions of assumpsit upon the contracts, or as actions upon the case for negligence, the rights and liabilities of the parties must be judged by the same standard. The form of the action concerns the remedy, but does not affect the legal obligations of the parties. In either form of action the liability of the defendant, and the rights of the plaintiffs, are based upon the contracts".

It therefore follows that the New York law governs the right of the plaintiff to recover in this case for injuries suffered as a passenger by reason of the defendant's breach of his New York-governed promise. To put the point in another way, the fact that the contract was governed by New York law determines that New York law is the "proper law of the tort" in the passenger's action for a tort committed in breach of the duties assumed by the contract.

A word should be added about the sufficiency of the allegations of the complaint. The complaint alleges that both parties were, at the time of the accident and still were at the time of the commencement of the action, residents of Rochester, New York. It does not explicitly allege that the trip originated in Rochester and that it was to terminate there. But this is fairly inferable from the allegations of the complaint; it will certainly be permissible for the plaintiff to prove these facts under the allegations of the complaint. Upon a motion to dismiss the complaint, the plaintiff is entitled to the benefit of all reasonable intendments (*Dyer* v. *Broadway Cent. Bank*, 252 N. Y. 430). In any event, if the "proper law of the tort" approach is adopted, the mere fact that it appears on the face of the complaint that the accident occurred in Ontario is not sufficient to authorize the dismissal of the complaint. The question of the respective interests of the jurisdictions involved must be determined upon the trial after a development of all the relevant factors. If, however, it should be thought than an explicit statement in the complaint of the factors relied upon by the plaintiff should be required, leave to amend the complaint should be given; the unconditional dismissal of the complaint is unjustifiable.

Finally, even if the traditional choice-of-law rule should be applied and it should be held that the Ontario law governed all issues in the case, it would still be the whole law of Ontario, including its choice-of-law rules, which we would be called upon to apply. So far as I have been able to find, there is no decision by the courts of Ontario on the question of whether the Ontario guest statute would be applied to an action in Ontario between the residents of another jurisdiction who were traveling through the Province when an accident occurred there. The Ontario courts might well hold that they would look to the law of the residence of the parties or to the law of the State in which the trip originated and the relationship of guest and driver was created, to determine whether there was any bar against the guest recovering from the driver. Or the Ontario courts might hold, simply as a matter of the construction of the Ontario statute, that the statute is not intended to apply to nonresidents traveling through the Province (see Freund, Chief Justice Stone and the Conflict of Laws, 59 Harv. L. Rev. 1193, 1209–1210, 1223–1224). As has been pointed out above, the primary purpose of the enactment of the Ontario statute was to prevent collusion among its residents affecting the insurance premiums payable by its residents. This purpose would be fully served even if the statute were construed as applying only to accidents involving Ontario drivers or owners. In view of the uncertainty as to the Ontario law on this point, the courts of this State

should not undertake to decide what the Ontario holding would be, without the benefit of advice or proof by experts in Canadian law. The court ought to decline to take judicial notice of the Ontario statute, in the exercise of its discretion under section 344-a of the Civil Practice Act, for the purpose of the motion to dismiss the complaint (cf. *Pfleuger* v. *Pfleuger*, 304 N. Y. 148), and ought to allow the matter to go to trial, so that Canadian experts could be presented and examined on this unsettled point of Ontario law. Upon this view of the case, the motion to dismiss the complaint should be denied, with leave to the defendant executrix to set up her interpretation of the Ontario law as an affirmative defense in her answer.

For these reasons, I would reverse the judgment of dismissal and I would deny the motion to dismiss the complaint.

Bastow, J. P., Goldman, McClusky and Henry, JJ., concur in decision; Halpern, J., dissents in opinion and votes to reverse the judgment and order and to deny the motion to dismiss the complaint.

Judgment and the order insofar as appealed from affirmed, without costs of this appeal to either party.